**FILED**
**Jan 31, 2023**
**12:27 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | | |
|---|---|---|
| **BARBARA FOULKS,** | ) | **Docket No.: 2022-08-1051** |
| **Employee,** | ) | |
| v. | ) | |
| **ABM INDUSTRY GROUPS LLC,** | ) | **State File No.: 64828-2021** |
| **Employer,** | ) | |
| And | ) | |
| **INDEMNITY INSURANCE** | ) | **Judge Shaterra R. Marion** |
| **COMPANY OF AMERICA,** | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on January 11, 2023, to determine whether temporary total disability benefits should be reinstated based on the treatment Ms. Foulks is receiving from Dr. Michael Cody Scarbrough. The Court finds the evidence supports Ms. Foulks's contention that Dr. Scarbrough's treatment entitles her to temporary total disability payments, and therefore holds that she is likely to prevail at a hearing on the merits.

### History of Claim

The parties agreed that Ms. Foulks suffered a compensable injury to her ribs, right foot, and right knee on July 28, 2021, while working for ABM. She selected Dr. John Lochemes from a panel.

Ms. Foulks's care with Dr. Lochemes consisted of foot x-rays, MRIs of her knees, medication, and physical and massage therapy. Dr. Lochemes initially referred Ms. Foulks to Dr. Scarbrough in October for "consideration of blocks for the nerve pain she is having," and she was again referred to Dr. Scarbrough two weeks later. However, according to his notes Ms. Foulks stated that she did not wish to proceed with having a block done at that time. Dr. Lochemes referred Ms. Foulks to Dr. Scarbrough again in December. Ms. Foulks had her next and final visit with Dr. Lochemes on April 26, 2022. In his notes he stated:

1

"the symptoms she is presenting with will continue to be treated by Dr. Scarbrough." He placed Ms. Foulks at maximum medical improvement from an orthopedic standpoint..

Dr. Scarbrough began seeing Ms. Foulks in December 2021. He prescribed medication, ordered a repeat x-ray and a bone scan of her lower right extremity, and he desired to enroll her in "extensive physical therapy including our IPRP setup with inclusion of psychiatric care." He noted her developing decreased range of motion and concerns of an evolving complex regional pain syndrome.

She next visited Dr. Scarbrough in January 2022, where he stated she "never got full treatment for her right foot and ankle" and later developed the CRPS symptoms of dysesthesia, burning pain, decreased range of motion, skin changes, and swelling. He also noted that portions of his recommendations were denied but reiterated the need for the treatment, as Ms. Foulks "has significant lack of plantarflexion and dorsiflexion of the right foot and ankle." He again recommended "aggressive physical therapy interventions to regain her overall functional status," and noted, "I think we have lost some ground in terms of her overall functional capacity given the significant delay in physical therapy."

At this visit, Dr. Scarbrough stated that Ms. Foulks was adamant about not treating her pain with ongoing medications or injections, and instead she wanted the aggressive physical therapy interventions to regain her overall functional status.

Dr. Scarbrough expressed frustration in his notes from Ms. Foulks's visit in March due to the limits on what he had been able to get approved. He stated her need for treatment was "desperate" and noted that she has started having "some low back discomfort associated with her significant gait instability from her right foot and ankle pain."

Ms. Foulks returned to Dr. Scarbrough in September, where he noted that she was able to do some physical therapy in June, but he was still recommending the "intensive rehabilitation program." He stated that while she was placed at maximum medical improvement from an orthopedic standpoint, she was not at maximum medical improvement for her chronic pain, as "[w]e have yet to even begin appropriate treatment strategies for her findings of the right foot and ankle." He also recommended a nurse case manager to discuss her care and a driver to take her to her appointments, and he reiterated his desire for the triple phase bone scan and the x-ray. He additionally requested a nerve block, as Ms. Foulks appeared ready for it.

Dr. Scarbrough received the x-rays and bone scan he had been requesting and reviewed them with Ms. Foulks at her appointment in October. He requested a left foot and ankle x-ray study due to the increased loadbearing placed on her left side. He again requested the nerve block, as it had not been approved, along with the "extensive" physical therapy, to "correct her gait and prevent any further deterioration" in function. He also repeated Ms. Foulks's need for a case manager and a driver.

Ms. Foulks testified that Dr. Scarbrough wanted her to return to physical therapy and give her a block. She additionally stated that she was on medication, but Dr. Scarbrough "was trying to get me to go further." As of the date of the hearing, she had neither had the block nor the physical therapy.

The parties stipulated that Ms. Foulks's compensation rate is $374.49, and that there is a $16,070.07 temporary disability overpayment.

Ms. Foulks testified that she started working part-time on December 5, 2022. She works 20 hours a week and makes $15 an hour. She further stated that she was off work for the holidays.[1]

### Findings of Fact and Conclusions of Law

At this Expedited Hearing, Ms. Foulks must show she would likely prevail at a hearing on the merits regarding her request for temporary total disability benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2022). The Court finds she likely would.

The issue is whether Ms. Foulks is entitled to temporary total disability benefits after Dr. Lochemes, her authorized treating orthopedic, released her at maximum medical improvement and she continues to treat with Dr. Scarbrough. Tennessee Code Annotated section 50-6-207(1)(E) states that an employee "shall be conclusively presumed to be at maximum medical improvement when the treating physician ends all *active* medical treatment and *the only care provided is for the treatment of pain* or for a mental injury that arose primarily out of a compensable physical injury." (Emphasis added). Put another way, the issue is whether Dr. Scarbrough's treatment constitutes active treatment, or if he is only providing care for the treatment of pain.

The central focus when interpreting any statute is to "ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007). Unless the language is ambiguous, the Court must derive legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id.*

Here, the natural and ordinary meaning of the statute, as indeed it is almost a verbatim recitation of the statute, is that maximum medical improvement is presumed when all active medical treatment has ended, and the only remaining treatment is for pain alone.

---

[1] The parties stipulated that the sole issue was whether Ms. Foulks is entitled to continued temporary *total* disability. Therefore, the Court will not address whether Ms. Foulks is entitled to temporary partial disability.

It is therefore also true to say that maximum medical improvement is *not* presumed when the medical treatment is *not* for pain alone, and returns us to the question of whether Dr. Scarbrough's treatment of Ms. Foulks constitutes active medical treatment, or passive treatment for pain alone.

Black's Law Dictionary defines active as "this is an action; that demands action; actually subsisting; the opposite passive." Black's Law Dictionary 31 (5th ed. 1979) Black's defines passive as "As used in law, this term means inactive; permissive; consisting in endurance or submission, rather than action." Black's Law Dictionary 1012 (5th ed. 1979). Passive can further be defined as "not acting to influence or change a situation." Dictionary.Cambridge.org/us/, https://dictionary.cambridge.org/us/dictionary/english/passive (last visited Jan. 20, 2023).

According to Dr. Scarbrough, Ms. Foulks never received full treatment for her right foot and ankle and was continuing to lose function. His treatment plan is one of action, as he is attempting to change Ms. Foulks's situation by improving her function and gait, not simply endure her situation from a pain standpoint.

ABM argued that section 50-6-207(1)(E) does not distinguish between active pain management and pain management. However, the Court interprets the statute to mean that if an employee is only treating for pain or a mental injury, then all active treatment has ended. Here, active treatment has not ended, because the treatment is not for pain alone.

Further, ABM argued that Dr. Lochemes is the treating physician referenced in section 50-6-207(1)(E). However, the parties have stipulated that Dr. Scarbrough is an authorized treating physician under the Tennessee Workers' Compensation Act, and case law permits more than one treating physician. *Johnson v. Inspire Brands d/b/a Blazin Wings, Inc.,* 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *23 (Sept. 7, 2022). Therefore, the Court finds that if Dr. Scarbrough's treatment is active and more than for pain, then Ms. Foulks is not conclusively presumed to be at maximum medical improvement.

In *Tolbert v. MPW Industrial Services, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 14 (Mar. 24, 2016), the Appeals Board applied section 50-6-207(1)(E) in an initially similar situation: the employee's orthopedic physician placed him at maximum medical improvement and referred him for pain management. The employee first saw the pain management physician on November 11, 2015. After several visits, the pain management physician assigned restrictions and wrote he anticipated maximum medical improvement in approximately four weeks. The employee testified that he was offered no treatment options other than controlling his pain with medication. *Id.* at *3. The trial court awarded temporary total disability benefits from November 11, 2015, until he returned to work or the pain management physician placed him at maximum medical improvement. The Appeals Board found the conclusive presumption applied and reversed the trial court's

decision because the only treatment option offered was "trying to control the pain," and the employee was offered no treatment options other than pain management. *Id.* at *13.

Here, unlike in *Tolbert*, Dr. Scarbrough is doing more than trying to control Ms. Foulks's pain and has offered other treatment options. Specifically, Dr. Scarbrough has ordered aggressive physical therapy interventions to regain her overall functional status, correct her gait, and prevent any further deterioration in function. Dr. Scarbrough's records state that his objective is functional improvement and not just pain management. Additionally, Ms. Foulks testified that Dr. Scarbrough "was trying to get me to go further" than simply taking medication.

Therefore, the Court finds that Ms. Foulks is not at maximum medical improvement per Tennessee Code Annotated section 50-6-207(1)(E) because her medical treatment is still active, and the treatment is not only for pain. Therefore, temporary disability benefits should be reinstated for the period that Ms. Foulks was off work.

The parties agreed that ABM overpaid Ms. Foulks temporary total disability benefits in the amount of $16,070.07. Ms. Foulks has requested that the credit be applied against any permanent partial disability benefits she is awarded. Due to the amount of the overpayment credit and her compensation rate, the Court holds that the credit should be applied against the temporary total disability benefits awarded in this order.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Foulks is awarded temporary total disability benefits at the rate of $374.49 from April 26, 2022, to December 5, 2022, which totals $11,876.68.

2. The owed benefits of $11,876.68, will be deducted from the $16,070.07 temporary disability overpayment, reducing the overpayment to $4,193.39. Her attorney is entitled to fees totaling twenty percent of this award.

3. The Court sets **a status conference on April 24, 2023, at 9:30 a.m. Central Time.** The parties must call (866) 943-0014 to participate. Failure to call might result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The insurer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For

questions regarding compliance, please contact the Workers' Compensation Compliance Program via email WCCompliance.Program@tn.gov.

**ENTERED January 31, 2023.**

_____
**Judge Shaterra R. Marion**
**Court of Workers' Compensation Claims**


**APPENDIX**

Exhibits:
1. Joint Stipulations Filed by the Parties
2. Dr. John Lochemes's medical records and response to Employer's letter
3. Dr. Michael Cody Scarbrough's medical records and response to Employee's letter

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Hearing Request, along with Affidavit of Barbara Foulks
4. Employer's Pre-Expedited Hearing Brief,
5. Employer's Witness and Exhibit List
6. Employee's Pre-Hearing Brief

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on January 31, 2023.

| Name | Certified Mail | U.S. Mail | Email | Service sent to: |
|---|---|---|---|---|
| Jonathan May, Employee's Attorney | | | X | jmay@forthepeople.com cwoods@forthepeople.com |
| David Deming, Employer's Attorney | | | X | ddeming@manierherod.com tjoiner@manierherod.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*